# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **THE COOPER-CLARK FOUNDATION, on behalf of itself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**MERIT ENERGY COMPANY, LLC,**<br><br>Defendant. | Case No. 23-1097-JAR-GEB |

## MEMORANDUM AND ORDER

Plaintiff the Cooper-Clark Foundation filed a putative class action in state court alleging that Defendant Merit Energy Company, LLC underpaid royalties for natural gas wells it operated in Kansas. Plaintiff pleaded in the First Amended Class Action Petition ("FACAP") that "[t]he underpayment to the entire class of royalty owners is less than $5 million, excluding prejudgment interest."[1] On May 22, 2023, Defendant removed the action under the Class Action Fairness Act ("CAFA"), pleading that the amount in controversy exceeds $5 million, at least one member of the putative class is from a state different from any other defendant, and the number of putative class members exceeds 100.[2] Before the Court is Plaintiff's Motion to Remand (Doc. 11). The Court has fully considered the record, which includes limited jurisdictional discovery and supplemental briefing, and is prepared to rule. As described more fully below, the Court denies Plaintiff's motion to remand.

---

[1] Doc. 1-2 ¶ 9.

[2] Doc. 1 ¶ 6.

**I.      Legal Standard**

Federal courts are required to remand a case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[3]  To avoid remand, defendants must show that the action satisfies the requirements for federal jurisdiction.[4] Because federal courts "are courts of limited jurisdiction," there is typically a presumption against federal jurisdiction.[5]  However, there is no "antiremoval presumption" for cases arising under CAFA.[6]  In fact, "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court."[7]  Under CAFA, federal district courts have original jurisdiction "to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"[8]

If the plaintiff does not assert an amount in controversy in the complaint, the defendant may assert "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[9]  In *Dart Cherokee*, the Supreme Court held that "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."[10]  In other words, all that is required in the notice of removal is a "short and plain statement of the grounds for removal," including "a

---

[3] 28 U.S.C. § 1447(c).

[4] *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." (citation omitted)).

[5] *Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[6] *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

[7] *Id.*

[8] *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

[9] 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee*, 574 U.S. at 89.

[10] 574 U.S. at 87.

plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[11] If the plaintiff disputes the defendant's amount-in-controversy allegation, removal may be appropriate "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."[12]

Proof to a legal certainty is not required, but the Court may use discovery to determine whether the amount in controversy exceeds the jurisdictional threshold.[13] When a dispute arises, the Court "must make findings of jurisdictional fact to which the preponderance standard applies."[14] The Tenth Circuit has explained that a defendant can prove jurisdictional facts in the following ways:

> by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.[15]

Once the defendant meets its burden, "remand is appropriate only if the plaintiff can establish that it is legally impossible to recover more than $5,000,000."[16]

## II. Discussion

Defendant's Notice of Removal contains a short and plain statement of the grounds for removal, including an allegation that the $5 million jurisdictional threshold under CAFA is met

---

[11] *Id.* at 83, 89 (abrogating *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1291 & n.4 (2001); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775, 776–78 (10th Cir. 2005)).

[12] *Id.* at 88 & n.1 (quoting 28 U.S.C. § 1446(c)(2)(B)).

[13] *Id.* at 88–89.

[14] *Id.* at 89 (quoting H.R. Rep. No. 112-10, at 16 (2011)).

[15] *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (alterations in original) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir.2008)).

[16] *Id.*

based on the putative class definition and the claims alleged in the FACAP. Plaintiff moved to remand on the basis that Defendant's amount-in-controversy allegation was not plausible given its own statement in the FACAP that its damages would not exceed $5 million. Defendant responded, attaching an expert report to support its amount-in-controversy allegation. The Court granted Plaintiff's request in the reply brief for limited jurisdictional discovery.[17] The Court permitted Plaintiff to depose Defendant's expert, and allowed Plaintiff to supplement its reply brief and Defendant to file a surreply.

In the supplemental reply brief, Plaintiff appears to concede that Defendant plausibly alleges that the amount-in-controversy is met, but disputes Defendant's expert's calculations and submits its own expert report. Therefore, since there is a dispute, the Court must determine whether the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence. In making this determination, the Court is mindful that "a plaintiff's attempt to limit damages in the complaint is not dispositive when determining the amount in controversy."[18] If Defendant meets its burden, the Court will then consider whether Plaintiff can show that it is legally impossible for it to recover more than $5 million.

Defendant submits Angela Paslay's expert report in support of its allegation that the amount in controversy exceeds $5 million. Paslay is a Certified Public Accountant who has substantial experience in the oil and gas industry, including in litigation related to the calculation and payment of royalties. She estimated the amount in controversy based on the class definition and claims alleged in the FACAP. Paslay "received and relied on actual data and documents provided by Merit in this matter."[19] Her calculations cover the production months May 2014

---

[17] Doc. 24.

[18] *Frederick*, 683 F.3d at 1247.

[19] Doc. 16-2 ¶ 4 (listing the data and documents Defendant provided to her).

4

through the expected date that the class notice will be given, which Defendant advised would likely occur no sooner than October 2024. Paslay's report includes Table 1, which breaks down her calculation that Plaintiff's claims represent an $8,120,456 minimum amount in controversy for production months May 2014 through September 2024. In Table 2, Paslay calculated an alternative minimum amount in controversy of $7,166,985 for production months May 2014 through April 2023—the month before the FACAP was filed. The Court finds that this report is sufficient to demonstrate by a preponderance that the amount in controversy exceeds $5 million.

As the Tenth Circuit has counseled, "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much."[20] Plaintiff first argues that Paslay incorrectly included wells in her report that are not part of the class definition.

The class definition in the FACAP is:

> All persons who were royalty owners in Kansas wells from May 1, 2014, to the date Class Notice is given, where Defendant was the operator (or a working interest owner who marketed its share of gas and directly paid royalties to the royalty owners) and whose gas was moved over the Ulysses Gas Gathering System (UGGS) *and originally dedicated under the June 15, 1998 Amoco Gas Processing Agreement.*
>
> Excluded from the Class are: (1) the Office of Natural Resources Revenue, formerly known as the Mineral Management Service (Indian tribes and the United States); (2) all presiding judges together with their immediate family members; (3) Defendant, its affiliates, and employees, officers, and directors; (4) any publicly traded company or its affiliated entity that produces, gathers, processes, or markets gas; (5) overriding royalty owners and others whose interest was carved out from the lessee's interest; and (6) royalty owners whose leases expressly authorize the

---

[20] *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 914 (10th Cir. 2016) (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

> deduction of costs incurred to process the gas or otherwise place
> the gas or its constituents in marketable condition.[21]

According to Plaintiff's expert, Daniel T. Reineke, Paslay incorrectly assumed for purposes of her calculations that all of the royalty owners whose gas was moved over the UGGS would have claims in this matter; she did not filter out the wells that were not originally dedicated under the June 15, 1998 Amoco Gas Processing Agreement ("Amoco Agreement"). Reineke provides revised, much lower numbers based on the 170 wells that he contends were originally dedicated under that agreement. Reineke contends that adjusting Paslay's calculations in Tables 1 and 2 to reflect recovery on those 170 wells produces minimum amount-in-controversy figures of $3,070,022 and $2,717,101, respectively.

Defendant responds that Reineke's Declaration does not suffice to establish the legal impossibility of Paslay's figures because Reinke does not provide any evidence or support for his revised calculations and Paslay's assumptions were not unreasonable based on the data with which she was provided.

The Court agrees with Defendant that Plaintiff's evidence falls short of demonstrating that Defendant's amount-in-controversy figures are legally impossible. In considering Plaintiff's arguments, the Court is mindful of the standard it must apply here:

> [T]he question at this stage in the proceedings isn't what damages
> the plaintiff will *likely* prove but what a factfinder *might*
> conceivably lawfully award. . . . At the end of the day, "[e]ven if it
> is highly improbable that the Plaintiffs will recover the amounts
> Defendants have put into controversy, this does not meet the
> legally impossible standard."[22]

---

[21] Doc. 1-1 ¶ 10 (emphasis added).

[22] *Hammond*, 844 F.3d at 912 (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013)).

6

Paslay states in her declaration that she considered the class definition, along with the following documents provided to her by Defendant: historical electronic payment history extracted from Defendant's revenue accounting system for the production months of May 2014 through February 2023; gas gathering, processing, and sales agreements; sample plant statements; and the *Littell* Settlement Agreement and related material.[23]  Paslay reached her calculations in Tables 1 and 2 by compiling from Defendant's electronic pay history the files and relevant records for "the putative class members."[24]

Citing her deposition testimony, Plaintiff maintains that Paslay used figures from all wells on the UGGS, without limiting her analysis to those originally dedicated under the Amoco Agreement.  When asked by Plaintiff's counsel if she knew whether "all of the UGGS wells, all of the wells that were provided to you, are in this particular class or not," Paslay responded: "It's my assumption that the UGGS wells that were provided to me are part of this class.  I have not independently checked the dedication to the Jayhawk agreement and done that level of analysis at this point in the proceeding."[25]

According to Plaintiff's expert, "Paslay calculated damages for 419 wells connected to the UGGS, but only 170 of those wells are both connected to the UGGS and were originally dedicated under the Amoco Agreement."[26]  Reineke attached to his declaration a class well list of 170 wells from another state court case, *Cooper Clark Foundation v. Oxy USA, Inc.*, No. 2017-CV-3 in Grant County, Kansas.  He asserts that these 170 wells are the only wells that meet the

---

[23] According to the FACAP, the class wells in this case are subject to a statewide class action settlement from *Littell v. OXY USA, Inc.*, No. 98-CV-51, which was litigated in Stevens County Kansas District Court. Defendant purchased the class wells from Oxy USA, Inc. in 2014. Doc. 1-2 ¶ 1.

[24] Doc. 16-2 ¶ 9.

[25] Doc. 28-1 at 26.

[26] *Id.* ¶ 7.

class definition in this case, incorrectly asserting that this is "stated in the First Amended Petition."[27] The FACAP does not state a specific class well number of 170. The FACAP states only that "there are more than 100 Class Wells and over 400 Class Members residing in multiple states."[28] The FACAP references the *Littell* case, which resulted in a settlement agreement that barred certain royalty deductions. And the FACAP references the *Cooper Clark* case once, stating that "[a]fter *Littell*, Oxy faced multiple class actions alleging royalty underpayments," which were settled in the *Cooper Clark* case.[29] Plaintiff alleges in this lawsuit that Defendant "purchased the Class Wells from Oxy in 2014 and continues to take improper deductions from royalty. This action seeks to recover the royalties underpaid because of those deductions."[30]

There is no evidence in the record or specifically alleged in the FACAP about the relevance of the *Cooper Clark* case to the class definition in this case. Defendant contests that the class list provided in that case is the same as the list of wells dedicated under the 1998 Amoco Agreement. And Reineke does not state in his declaration that he independently verified which wells were dedicated under the Amoco Agreement.

In sum, the Court does not have sufficient evidence before it to accept as true Reineke's assertion in his declaration that the class definition in this case is limited to 170 wells, such that the Court can make a finding that Paslay's calculations and well assumptions are legally impossible. There is a question of fact about how many wells are covered by Plaintiff's class definition, which depends on how many wells' gas both moved over the UGGS and were originally dedicated under the Amoco Agreement. Even if it is highly improbable that all of the

---

[27] *Id.* ¶ 8.

[28] Doc. 1-2 ¶ 11.

[29] *Id.* ¶ 2.

[30] *Id.* ¶ 3.

8

wells used by Paslay in her calculations will ultimately fit within the class definition, Defendant's evidence falls short of demonstrating that Paslay's calculations are legally impossible.

Plaintiff's second point of error with Paslay's calculations is that the amount in controversy must be measured as of the date the FACAP was filed in state court—May 15, 2023. Plaintiff argues that the time period for the class to recover cannot extend beyond the date the FACAP was filed, despite the fact that the class definition in the FACAP explicitly seeks to recover between May 1, 2014, and "the date Class Notice is given."[31]  The Court need not determine whether the Table 1 or Table 2 calculation in Palsay's report is correct, because in Table 2, Paslay calculated that the minimum amount in controversy exceeds $7 million if measured between May 1, 2014 and April 2023, just before the FACAP was filed. Therefore, even if the amount in controversy is measured between May 1, 2014, and the date the FACAP was filed, Defendant has met its burden of demonstrating by a preponderance of the evidence that CAFA's amount-in-controversy threshold is met, and Defendant has failed to show that Defendant's allegation is legally impossible.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Remand (Doc. 11) is **denied**.

**IT IS SO ORDERED.**

Dated: October 30, 2023

---

[31] Doc. 1-2 ¶ 10; *see Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006) (explaining that under the time-of-filing rule, the Court must determine jurisdictional facts at the time the complaint is filed); *Whisenant v. Sheridan Prod. Co.*, No. CIV-15-81, 2016 WL 5338557, at *6 (W.D. Okla. Sept. 23, 2016) (measuring amount-in-controversy in CAFA case for royalties up until date class notice is given where the plaintiff used this endpoint to define class because "it was reasonable for defendant at the time of removal to determine that the amount in controversy would include damages up until the time the class was given notification").

S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE